IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**PHOEBE WURST**,
1212 St. Clair Road
Oreland, PA 19075
*A Resident of Montgomery County, PA*

                Plaintiff;        Docket No.: 2:26-cv-4898

vs.

**COREWORKS LLC,**
2400 Yorkmont Road
Charlotte, NC 28217
*A Delaware For-Profit Corporation,*

      and

**COMPASS GROUP USA, INC.,**
2400 Yorkmont Road
Charlotte, NC 28217
*A Delaware For-Profit Corporation,*

                            **COMPLAINT IN CIVIL ACTION**

          Defendants.        Filed on behalf of Plaintiff:
                              PHOEBE WURST

                              Counsel of Record for this Party:
                              Steven Auerbach, Esquire, LL.M.
                              Law Office of Steven T. Auerbach
                              201 Meetinghouse Lane
                              Merion Station, PA 19066
                              Ph:  (215) 964-4410
                              Fax: (215) 613-0890
                              Auerbach.Steven@gmail.com
                              Pa. I.D. #317309

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHOEBE WURST, | ) | |
| Plaintiff; | ) | |
| | ) | No.: 2:26-cv-4898 |
| vs. | ) | |
| | ) | |
| COREWORKS LLC, et al., | ) | |
| Defendants. | ) | |

## I. EMPLOYMENT DISCRIMINATION COMPLAINT

Plaintiff, Phoebe Wurst ("Mrs. Wurst" or "Plaintiff"), by and through her undersigned counsel, the Law Office of Steven T. Auerbach, hereby files this Employment Discrimination Complaint against Defendants Coreworks, LLC ("Coreworks") and Compass Group USA, Inc. ("Compass")(together, the "Defendants")(collectively, the "Parties") seeking declaratory and equitable relief; economic, compensatory, and punitive damages; and attorneys' fees and costs to redress Defendants' violations of civil rights as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq* ("Title VII") and by the Pennsylvania Human Relations Act, 43 PA. Cons. Stat. § 951 *et seq* (the "PHRA"), and in support thereof, avers the following:

## II. INTRODUCTION

**Religious Discrimination & Wrongful Termination**

1. Title VII and the PHRA prohibit religious discrimination in the workplace. Employees can and do sustain substantial damages, both economically and emotionally, when an employer forces them to choose between their sincerely held religious practices and their continued employment. This is especially true where, as here, the religious practice at issue concerns Sabbath observance, a core and recurring obligation that affects an employee's ability to work during specific hours each week.

2.      Acknowledging this potential for harm, federal and state law, pursuant to Title VII and the PHRA, provide important substantive and procedural protections to employees who require reasonable accommodations for sincerely held religious beliefs, practices, and observances.

3.      Plaintiff's religious discrimination and failure-to-accommodate claims arise out of Defendant's sudden refusal to continue reasonably accommodating Plaintiff's Sabbath observance, which Defendant had accommodated for years, despite Plaintiff's notice of the religious conflict and the availability of accommodations that would have allowed Plaintiff to remain employed without violating her sincerely held religious beliefs.

4.      Plaintiff's wrongful termination claims stem from Defendant's decision to discipline and/or terminate Plaintiff because of her inability to work during the Sabbath, rather than engaging in a good-faith accommodation process or implementing a reasonable accommodation as required by law.

### III. PARTIES

5.      Defendants, Coreworks and Compass are Delaware corporations with their principal places of business in Charlotte, North Carolina. Coreworks is a wholly-owned subsidiary of Compass, which is a wholly-owned subsidiary of Compass Group PLC, a British public limited company. *Coreworks, LLC, et al. v. Morrisssey*, PICS No. 3:22-cv-02020 (D.N.J. 2022).

6.      Defendants provide support services to healthcare facilities and employ over 800 people. Defendants maintain scheduling policies that require weekend work and deny flexibility once enjoyed by employees, thereby disadvantaging Sabbath-observant individuals whose sincerely held religious beliefs conflict with working on their Sabbath.

7.    Plaintiff, Mrs. Wurst is a Sabbath-observant Christian adult citizen of the United States and is a resident of Montgomery County, Pennsylvania.

8.    From approximately November 2001 through February 7, 2025 (the "Term of Employment"), Plaintiff was employed by various Compass entities, with Coreworks serving as her final direct employer. Compass and Coreworks are Plaintiff's "employers" within the meaning of Title VII and the PHRA.

9.    At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of Title VII and the PHRA.

10.    At all times relevant herein, Defendants acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

11.    Defendants caused the violations set forth in this Complaint.

12.    Defendants failed to adequately train their employees to prevent and/or correct the violations set forth in this Complaint.

13.    Defendants failed to adequately supervise their employees to prevent and/or correct the violations set forth in this Complaint.

14.    Defendants failed to prevent and aided and abetted in the violations set forth in this Complaint.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

16.    On April 30, 2025, Plaintiff filed a timely charge of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and directed the EEOC to cross-file her claim with the Pennsylvania Human Relations Commission ("PHRC") .

17.    Plaintiff received her "Right to Sue" Notice from the EEOC on April 17, 2026.

18.    Plaintiff commences this action within ninety (90) days of receipt of this Notice and after the expiration of the PHRC's one-year exclusive jurisdiction.

### V. JURISDICTION AND VENUE

19.    This Court has original jurisdiction under Title VII (§ 706(f)(3)). This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1334 because this action arises under the laws of the United States and seeks redress for violations of  federal laws and/or seeks to recover damages and to secure equitable relief under an act of Congress providing for the protection of civil rights.

20.    Discretionary supplemental jurisdiction over Plaintiff's state law claims is provided by 28 U.S.C. § 1367(a). The state law claims form part of the same case or controversy and derive from the same common nucleus of operative facts on which Plaintiff's federal claims are based. Furthermore, no reasons exist that would require this Honorable Court to decline jurisdiction. The state law claims do not raise novel or complex issues of state law, do not substantially predominate the claims over which this Honorable Court has original jurisdiction, and no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. § 1367(c).

21.    This Court may properly maintain personal jurisdiction over Defendants because their contacts with this Commonwealth and this judicial district are sufficient for the exercise of jurisdiction, complying with traditional notions of fair play and substantial justice, satisfying the

standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S, 310 (1945), and its progeny.

22.     Pursuant to Title VII (§ 706(f)(3)) and 28 U.S.C. §§ 1391(b)(2), venue is appropriate in the Eastern District of Pennsylvania as most if not all of the unlawful acts central to this matter occurred within Montgomery County, Pennsylvania and the relevant employment records are or should be maintained in Montgomery County, Pennsylvania.

## VI. FACTUAL ALLEGATIONS

23.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

### A. Plaintiff's Religious Observance and Defendants' Knowledge Thereof

24.     Plaintiff is a lifelong Sabbath-observant Christian. Her faith and practice are deeply rooted in her family background; she is both the daughter and the sister of preachers, and her Sabbath observance has been a central, enduring part of her religious life.

25.     For Mrs. Wurst, the weekend occupies a sacrosanct place in her schedule. Sundays are her Sabbath and are a dedicated day of worship and family fellowship, set apart from ordinary work and activities and are often spent attending services at her home church, sharing meals, and spending intentional, uninterrupted time with her family in reflection, rest, and prayer. On the limited occasions when she travels or takes family vacations, she continues to treat Sundays as a special day of rest and time with her family, even if its outward observance looks somewhat different. Saturdays are likewise important to her, functioning as a day for family time and catching up on personal matters—a welcomed reprieve from her on-the-road job.

26.     Throughout the Term of Employment, Defendants knew that Plaintiff maintained an active Christian faith, regularly served at her home church, and observed a weekend religious practice centered on Sabbath observance and family fellowship.

### B. Defendants' Historic Accommodation and Purported 10-4 Policy

27.    On multiple occasions, Defendants presented Plaintiff with work opportunities or scheduling expectations that would have required her to miss family time associated with her Sabbath observance and/or remain away from home under a purported ten-days-on/four-days-off policy. Each time that conflict arose, Defendants were informed of the religious issue and, for years, accommodated Plaintiff by permitting her to continue working without requiring her to forgo that weekend practice.

28.    Defendants thus maintained, in practice, an accommodation that allowed Plaintiff to perform the essential functions of her roles while remaining home for the weekend notwithstanding references to, or occasional invocation of, a purported 10-4 policy. Only later did Defendants stop honoring that accommodation and begin treating Plaintiff's longstanding religious practice as incompatible with her employment.

29.    Defendants changed course in late 2024, when management began insisting on a stricter version of the purported 10-4 policy and ceased honoring the longstanding practice under which Plaintiff had been allowed to return home on weekends.

30.    Defendants were again advised that the newly enforced weekend-travel expectation conflicted with Plaintiff's religious observance and longstanding weekend religious practice. Defendants were further advised that Plaintiff was not refusing travel altogether, but remained willing to travel extensively so long as she could return home in time for her Sabbath observance and weekend religious commitments.

### C. The Accommodation Denial

31.    Defendants rejected the longstanding arrangement they had previously permitted and instead treated Plaintiff's request to preserve that arrangement as incompatible with her position.

Defendants thereby converted a practice they had accommodated for years into a purported performance or scheduling problem.

32.    Defendants then directed Plaintiff into the accommodation process only after they stopped honoring the arrangement that had long allowed her to perform the job without conflict. Defendants then framed Plaintiff's request as a new or preferred exception, rather than a continuation of the practice they had already allowed for years.

33.    Defendants denied Plaintiff's January 2025 request for religious accommodation, notwithstanding their prior knowledge of her religious practice and their longstanding ability to accommodate it in practice.

34.    Defendants purported to offer Plaintiff the option of attending church while traveling, but Defendants knew or should have known that Plaintiff's religious practice was not limited to attending a service at any available church. Defendants had long known that Plaintiff's observance involved worship, service at her home church, and family fellowship as part of her weekend religious practice.

35.    Defendants continued after the denial to assign, or threaten to assign, Plaintiff to work in a manner inconsistent with the weekend practice they had previously accommodated. Defendants then characterized Plaintiff's effort to maintain that longstanding practice as refusal to perform, rather than as a request to continue a workable accommodation.

**D. The Termination**

36.    Defendants terminated Plaintiff's employment on February 7, 2025, after refusing to continue accommodating a religious practice they had accommodated for years. Defendants' actions form the basis of Plaintiff's religious discrimination and failure-to-accommodate claims.

37.    This termination detrimentally affected Plaintiff's mental health through feelings of depression and anxiety, caused a loss of wage, and adversely affected her reputation.

38.    This would detrimentally affect a reasonable person in like circumstances.

### COUNT I: WURST v. COREWORKS LLC, et al.
### Title VII - Disparate Treatment
(In the alternative to Count II, and pursuant to Fed. R. Civ. P. 8(d))

39.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40.    By committing the foregoing acts of discrimination against Plaintiff, Defendants violated Title VII.

41.    Defendants' practices were performed with malice or with reckless indifference to the protected rights of Plaintiff.

42.    As a direct and proximate result of Defendants' violation of Title VII, Plaintiff suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

43.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

44.    No previous application has been made for the relief requested herein.

### COUNT II: WURST v. COREWORKS LLC, et al.
### Title VII - Disparate Impact
(In the alternative to Count I, and pursuant to Fed. R. Civ. P. 8(d))

45.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.    By application of Defendants' above-described facially-neutral policies, a significantly discriminatory pattern has resulted to the detriment of Plaintiff.

47.    An alternative policy exists that would serve the Defendants' legitimate goals as well as the challenged policy with less of a discriminatory effect.

48.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

49.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

50.     No previous application has been made for the relief requested herein.

### COUNT III: WURST v. COREWORKS LLC, et al.
### PHRA - Disparate Treatment
(In the alternative to Count IV, and pursuant to Fed. R. Civ. P. 8(d))

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.     By committing the foregoing acts of discrimination against Plaintiff, Defendants violated the PHRA.

53.     Defendants' practices were performed with malice or with reckless indifference to the protected rights of Plaintiff.

54.     As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

55.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

56.     No previous application has been made for the relief requested herein.

### COUNT IV: WURST v. COREWORKS LLC, et al.
### PHRA - Disparate Treatment
(In the alternative to Count III, and pursuant to Fed. R. Civ. P. 8(d))

57     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58.    By application of Defendants' above-described facially-neutral policies, a significantly discriminatory pattern has resulted to the detriment of Plaintiff.

59.    An alternative policy exists that would serve the Defendants' legitimate goals as well as the challenged policy with less of a discriminatory effect.

60.    As a direct and proximate result of Defendants' violation of Title VII, Plaintiff suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

61.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

62.    No previous application has been made for the relief requested herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

a.   Award declaratory relief, pursuant to 28 U.S.C. § 2201(a) declaring that the above acts violate Title VII and the PHRA;

b.   Award injunctive relief, pursuant to Title VII (§ 706(g)) and PHRA (§ 12(c)(3)), compelling Defendants to discontinue their practice of violating Title VII and the PHRA in their adverse treatment of Sabbath-Observant individuals and providing a system to monitor compliance;

c.   Award injunctive relief, pursuant to Title VII (§ 706(g)) and PHRA (§ 12(c)(3)), directing Defendants to reinstate or promote Plaintiff to the position she would have occupied but for Defendants' unlawful conduct;

d.   Award equitable relief, pursuant to Title VII (§ 706(g)) and the PHRA (§ 12(c)(3)), requiring Defendants to make Plaintiff whole for all earnings she would have received

but for Defendants' unlawful conduct, including but not limited to wages, overtime, bonuses, and other lost benefits;

e. Award compensatory damages, pursuant to 42 U.S.C. § 1981a(b)(3), requiring Defendants to make Plaintiff whole for her past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses; and to mold/apportion any verdict in excess of the applicable damage's cap to a claim under the PHRA;

f. Award punitive damages, pursuant to 42 U.S.C. § 1981a(b)(1), punishing Defendants for its malice/reckless indifference to Plaintiff's federally-protected rights;

g. Award reasonable attorneys' fees and costs pursuant to Title VII (§ 706(k)); and PHRA (§ 12(c.2)), and

h. Award such other relief as this Court deems necessary and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the complaint.[1] [2]

**LAW OFFICE OF STEVEN T. AUERBACH**

By:    */s/ Steven Auerbach*
       Steven Auerbach, Esquire, LL.M.
       201 Meeting House Lane
       Merion Station, PA 19066
       (215) 964-4410
       Auerbach.Steven@gmail.com

*Attorney for Plaintiff*

Dated: July 14, 2026

---

[1] Pursuant to L. Fed. R. Civ. P. 53.2(3)(A), this matter is excluded from compulsory arbitration as jurisdiction is based in whole or in part on 28 U.S.C. §1343.

[2] Plaintiff's right to trial by jury on her Title VII (disparate treatment) claims is guaranteed by 42 U.S.C. § 1981a(c). Plaintiff's right to trial by jury on her PHRA claims is guaranteed by the Seventh Amendment of the United States Constitution. *See Graham v. Tolzis Communications, Inc., et al.*, PICS No. 98-6269 (E.D. Pa 2000).